Jettie IVEY

v.

UNITED STATES of America DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al.

Civ. A. No. C75–61A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 30, 1977.

Richard K. Greenstein, Atlanta, Ga., for plaintiff.

Richard A. Horder, Asst. U.S. Atty., Atlanta, Ga., for defendants.
15 U.S.C.A. § 1635.

## ORDER

JAMES C. HILL, Circuit Judge.

This Truth-in-Lending action is before the Court on the recommendations of the Special Master. The Special Master recommended that the motions by plaintiff and defendants for summary judgment be partially granted and partially denied. More specifically, the Special Master recommended that defendants' security interest in plaintiff's home be terminated; that plaintiff be declared to have no further obligations to defendants; that defendants be declared to have no obligations to make any refund to plaintiff; that plaintiff be denied attorney's fees; that defendants take nothing on their counterclaim; and that plaintiff recover her costs of this action.

On January 10, 1975, plaintiff filed this action for declaratory, injunctive and other relief to enforce rights secured by Title I of the Federal Consumer Credit Protection Act, as amended, 15 U.S.C.A. § 1601 et seq. (Truth in Lending Act). On December 10, 1969, plaintiff, Jettie Ivey, entered into a credit transaction with defendants, United States of America and the Department of Housing and Urban Development (HUD), in order to obtain a loan under section 312 of the Housing Act of 1964, as amended, 42 U.S.C.A. § 1452b. A security interest was acquired by defendants in real property which was used as the residence of plaintiff. In connection with the consummation of this loan, defendants furnished plaintiff a "Truth in Lending Disclosure Statement." The disclosure statement recited that the "Total of Payments" would be $12,055.20 payable in 240 consecutive monthly payments. The first payment of $61.53 was due on February 1, 1970, and thereafter, 239 payments of $50.23 were due the first of each month. Also, as a part of plaintiff's loan contract with defendants, plaintiff received notice[1] of her right to rescind the

---

1. Notice to Customer Required by Federal Law:

   You have entered into a transaction on December 16, 1969 which may result in a lien, mortgage, or other security interest on your home.

   Note 1 continued on next page.

transaction in accordance with section 125[2] of the Truth in Lending Act, as amended, 15 U.S.C.A. § 1635.

On July 16, 1974, plaintiff, through an attorney, notified defendants of her desire to rescind the loan transaction between herself and defendants. The letter of notification[3] recited that numerous disclosures required under the Truth in Lending Act were never given or erroneously stated and

Note 1—Continued

> You have a legal right under federal law to cancel this transaction, if you desire to do so, without any penalty or obligation within three business days from the above date or any later date on which all material disclosures required under the Truth in Lending Act have been given to you. If you so cancel the transaction, any lien, mortgage, or other security interest on your home arising from this transaction is automatically void. You are also entitled to receive a refund of any downpayment or other consideration if you cancel. If you decide to cancel this transaction you may do so by notifying

> THE HOUSING AUTHORITY OF THE CITY OF ATLANTA, GEORGIA
> (Name of Creditor)

> at 673 Capitol Avenue, S.E.—Atlanta, Georgia 30315
> (Address of Creditor's Place of Business)

> by mail or telegram sent not later than midnight of December 19th, 1969. You may also use any other form of written notice identifying the transaction if it is delivered to the above address not later than that time. This notice may be used for that purpose by dating and signing below.

> Plaintiff acknowledged the receipt of two copies of this notice.

2. Section 125 provides in pertinent part:

§ 1635. *Right of rescission as to certain transactions—Disclosure of obligor's right to rescind*

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

Return of money or property following rescission

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

3. The letter read in part:

Numerous disclosures required under the Federal Consumer Credit Protection Act, also known as "Truth-in-Lending", 15 U.S.C. Section 1601 et seq. and Regulation Z promulgated thereto, were never given to Mrs. Ivey or were erroneously stated. Thus, since all material disclosures were not made, Mrs. Ivey has instructed me to notify you of her desires to

requested that defendants take all action necessary to reflect the termination of the security interest held by defendants in plaintiff's home. Defendants made no response to this letter notification. Instead, defendants insisted that the loan was a valid transaction and that they would proceed to effect collection.[4] As defendants were in the process of taking actions which would have lead to foreclosure, this suit was instituted by plaintiff.

Defendants raise three objections to the recommendations of the Special Master. First, defendants contend that the Special Master erred in concluding that a "material disclosure" means pertinent rather than important and that an error of $11.30 in the total of payments was a material nondisclosure. Second, defendants object to the finding that they were guilty of untoward conduct and thus, not entitled to have rescission of the loan conditioned on the refund by plaintiff of the amount of money loaned to her. Finally, defendants object to the recommendations of the Special Master with regard to the remedies afforded. Plaintiff, in essence, also objects to a portion of the recommendation with regard to remedies and objects to the denial of her prayer for attorney's fees.

## MATERIAL DISCLOSURES

One defense relied upon in this rescission case derives from certain language used in section 125 of the Truth in Lending Act, as amended, 15 U.S.C.A. § 1635, which provides that

the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other *material* disclosures required under this part, whichever is later, . . ." (emphasis added).

This language is contrasted with the language used in the civil liability section, as amended, 15 U.S.C.A. § 1640, which makes no reference to *material* disclosures. The first issue thus raised in this case, and the one which the Court finds determinative, is the meaning of "material disclosures" and its application to the case at bar.

The Special Master concluded that the word "material" as used in the rescission section means pertinent rather than important. The Special Master found no case dealing explicitly with the meaning of "material disclosures" under section 125.[5] The Special Master principally relied upon the broad language used in several appellate decisions, in combination with the fact that no indication has ever been given in any opinion that a different standard applies to determining a violation under the different sections, in concluding that "material" merely means pertinent. For the reasons hereinafter stated, this Court is persuaded to the contrary.

It is certainly correct that courts have painted with a broad stroke in reciting the shortcomings of creditors vis-a-vis the rescission remedy. Thus, in *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976), the court speaks of the "required disclosures" and finds that the failure to disclose the

---

rescind the loan transaction between her and the United States through the Department of Housing and Urban Development.
Please treat this letter as your official notification of rescission of the above-described transaction. Pursuant to this rescission and federal regulations, please take all action necessary to reflect the termination of the United States' secondary security interest in the above-named property, as required by "Truth-in-Lending".

4. Plaintiff's unsatisfactory payment record had caused the loan servicing agent to return her loan to HUD in the fall of 1973. Until May, 1974, negotiations among the parties had con-

tinued in an attempt to resolve the matter. As of July, 1975, the loan account was 21 months in arrears and back payments totalling $1500.50 were due. The total amount paid by plaintiff to defendants under the loan was $2190.42.

5. Subsequent to the recommendations of the Special Master in this case, the court in *Dixon v. Greenville Credit & Investment Co.*, Civil No. 75–639A (N.D.Ga. November 23, 1976), agreed that "material" in this context means "pertinent" rather than important.

right to rescind within three days (the defendant gave two days) to be a violation; in *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976), the court noted the requirement of "material" omissions and concluded that the failure to set out the acceleration clause in the broker's statement (though set out in the note and deed of trust), the failure to label and disclose the amount financed in the broker's statement (though the information from which the amount could be readily calculated was disclosed), and the failure to clearly delineate additional information—though not egregious—were violative of the rescission section; in *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935 (9th Cir. 1975), the court speaks of "statutorily inadequate" disclosures and finds that the gross understatement of the annual percentage rate, the failure to disclose how charges for late payments were to be calculated, the failure to explain each element of the finance charge, the failure to indicate that interest began to accrue one day before the transaction was consummated, and the failure to give the *total* of the prepaid finance charge were violative of section 125; in *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974), the court speaks of the failure to make "detailed disclosures of credit terms" and the "full panoply of statutorily required information" without reference to any specific violations; and in *Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir. 1974), the court makes note of the required "usual disclosures" and the "requisite information" and notes that the defendant admittedly failed "to make certain disclosures of credit terms and rescission rights." See also *Charnita v. Federal Trade Commission*, 479 F.2d 684 (3rd Cir. 1973) ("required disclosures"); *Gerasta v. Hibernia National Bank*, 411 F.Supp. 176 (E.D.La.1975); *Pedro v. Pacific Plan of California*, 393 F.Supp. 315 (N.D.Cal.1975) ("material disclosures"). However a review of these cases and others reveals that in discussing the rescission remedy *not a single case* focuses on the statutory requirement that a creditor fail to make a "material disclosure." In addition, a survey of the *actual* violations which were found to exist in these cases shows mostly multiple non-disclosures or failure to disclose the right to rescind itself. Thus, the Court is of the opinion that the broad language casually used in numerous opinions is of little value in determining the meaning of "material" in section 125.

The mere fact that section 125 refers to "material" disclosures is itself of significance. In contrast, the civil liability section which imposes a limitation on recovery has no synonymous language, merely imposing liability for the failure "to disclose." The 1974 amendment to section 125 clearly demonstrates that the use of the word "material" was not inadvertent as the Congress again refers to "any other material disclosures." 88 Stat. 1517, 1519, 15 U.S.C.A. § 1635(f). Thus, the Court is persuaded that the mere failure "to disclose" information required by the Truth in Lending Act or the regulations is not sufficient to create liability under section 125. Liability under section 125 arises only if a "material disclosure" is not made.

The legislative history of section 125 is rather scant. On this topic the court in *Eby v. Realty, Inc. supra*, noted:

Neither the words of the statute nor the legislative history refer to the intended relationship between the rescission and civil liability provisions. Doubtless, this is because the rescission provision was introduced late in the legislative process. After the Senate had passed one version of the Truth in Lending Act, another version was presented before the House. During the debate on that bill, Congressman Cahill proposed an amendment requiring lenders to make the necessary disclosures three days earlier than usual if a security interest was to be retained or acquired in the borrower's home. Apparently, failure to comply would have subjected the creditor to civil liability equal to twice the finance charge, just like the failure to disclose any other information. The amendment was adopted without debate. 114 Cong.Rec. 1611 (1968). With no explanation the conference committee altered this to its present

form to provide the limited right of rescission.

495 F.2d at 651.

Thus, while the court in *Eby* recognized the "limited right of rescission," it also noted that the right of rescission invoked a broad sanction. *Id* at 652. Thus, it is not surprising that the Congress chose to qualify the rescission remedy so as to cover only "material" non-disclosures.

The meaning of "material" in section 125 has rarely been discussed.[6] The Special Master in this case felt that the definition should be synonymous with "pertinent." While the Court is cognizant of the liberal interpretation to be afforded the Truth in Lending Act, the Court is persuaded that the interpretation chosen by the Special Master would effectively nullify the distinction clearly found in the statute and eviscerate the intent of Congress in limiting the right of rescission to instances of "material" non-disclosures.

The word "material" is not a new concept in American jurisprudence. The Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), formulated a definition of materiality in the securities context:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard is fully consistent with *Mills'* [*v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)] general description of materiality as a requirement that "the defect have a significant propensity to affect the voting process." It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available. (footnote omitted).

426 U.S. at 449, 96 S.Ct. at 2133.

The Court is of the opinion that, in combination with the general purposes of the Truth in Lending Act, the above definition provides the general framework for resolution of the issue presented in this case.

■■ Section 102 of the Truth in Lending Act, as amended, 15 U.S.C.A. § 1601, declares the general purpose of the legislation:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

It is readily apparent that the main goal of this legislation is the informed use of credit by consumers and the route chosen to effectuate this goal is full disclosure. *See* 1968 U.S.C. Code Cong. and Ad.News, pp. 1962–2030; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). In furtherance of this goal, the courts have imposed liability under section 130 for "quite technical" violations for "Congress did not intend creditors to escape liability where only technical violations were involved." *Pennino v. Morris Kirschman and Company, Inc.*, 526 F.2d 367, 370 (5th Cir. 1976); *Grant v. Imperial Motors*, 539 F.2d 506 (5th Cir. 1976). However, as noted earlier, section 130 imposes liability for the mere failure "to disclose" while section 125 requires a "materi-

6. *See* note 5, *supra*.

al" non-disclosure. The Court is persuaded that the different language used in the statute was meant to limit liability under the rescission section to only those non-disclosures which a reasonable consumer would view as significantly altering the "total mix" of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer under the circumstances in his "comparison shopping" for credit.

Under this standard the plaintiff's claim in this case must fail. Under 12 C.F.R. § 226.8(b)(3) a creditor is required to disclose the number, amount, and due dates of payments scheduled to repay the indebtedness and "the sum of such payments using the term, 'total payments.'" The defendants concede that they failed to disclose accurately the total of payments. The disclosure statement shows one payment of $61.53 and 239 payments of $50.23. The total of these installments is $12,066.50. However the total of payments disclosed by the defendants was $12,055.20. This error was precipitated by the fact that the first installment was $11.30 more than the other 239 installments.

Upon application of the test outlined above, the court is convinced that this $11.30 error was not a "material" non-disclosure within the meaning of section 125. As the Special Master aptly noted, the "non-disclosure" was "technical and not very important." The information given by the defendants disclosed all of the requisite information, including a "total of payments." Of course, the "total of payments" was incorrect and understated by $11.30. However, the Court is convinced that this mis-disclosure would have absolutely no effect whatsoever on any reasonable consumer shopping for credit. Liberal interpretation of a statute is not a talismanic phrase leading inexorably to victory for the plaintiff. While the Truth in Lending Act was enacted to allow meaningful comparison shopping for consumers, it was not meant to frustrate the legitimate extension of credit. The Congress wisely prescribed a limited civil penalty for even "technical" violations of the statute but circumscribed the more harsh rescission remedy by requiring that liability therefor depend on a "material" violation.

The Special Master also found that the defendants did not provide for the acceleration of unearned interest; that the defendants did not attempt to acquire a security interest in after-acquired consumer goods; and that the defendants did not violate 12 C.F.R. § 226.8(b)(7) as there was no earned interest to be rebated on prepayment. The Court fully concurs in and adopts these findings of the Special Master. Since the Court finds that the defendants have not violated the Truth in Lending Act in any respect, the Court apprehends that the defendants' motion for summary judgment should be granted and that defendants are entitled to judgment on their counterclaim. The parties are directed to submit a proposed judgment to the Court within ten (10) days of the filing of this order.