**UNITED STATES of America, Plaintiff,**

**v.**

**SINCLAIR OIL COMPANY, d/b/a Sunlight Ranch Company, Defendant.**

**No. CV 88–278–BLG–JFB.**

United States District Court,
D. Montana,
Billings Division.

Dec. 21, 1990.

Lorraine D. Gallinger, Asst. U.S. Atty., Billings, Mont., Scott A. Schachter, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Washington, D.C., for plaintiff.

Douglas Y. Freeman, Harding, Mont., Henry W. Ipsen, Holme, Roberts & Owen, Denver, Colo., for defendant.

MEMORANDUM AND ORDER

BATTIN, Senior District Judge.

This action is brought by the United States to enforce certain provisions of the Clean Water Act. Both parties have moved for Partial Summary Judgment on

the issue of liability under the provisions of this Act. For the reasons stated below, the United States' Motion for Partial Summary Judgment is granted, and defendants' Motion is denied.

### Facts, Procedural Background, and Statutory Framework

In submitting their motions for determination of liability under the provisions of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, both parties agree upon the essential facts underlying this dispute. Defendant owns and operates a ranch in southeastern Montana, near the town of Wyola, through which the Little Bighorn River flows. In January, February, and March, 1986, defendant's employees performed river channel maintenance on about a two-mile stretch of the Little Bighorn River by removing various obstructions in the riverbed (e.g., fallen trees, large rocks, and sand and gravel bars) that had been deposited there during periods of high water runoff the previous year. Defendant also redistributed river cobble, repositing it "at selected locations to maintain the existing channel by reinforcing banks and cutting off new meandered channels." *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, at 4 (citing Deposition of Richard M. Torrens). Much of this channel maintenance work required the use and operation of a bulldozer in the streambed. Defendant steadfastly maintains, however, that no foreign materials were discharged, deposited, or otherwise introduced into the Little Bighorn River. *Id.*

The United States, acting in and through the Environmental Protection Agency, asserts that defendant's channel maintenance activities violated the provisions of the Clean Water Act. The government therefore brings this civil action under 33 U.S.C.

§ 1319(b)—section 309 of the Clean Water Act—to enjoin future channel clearing activity and to recover fines provided by the statute. In a nutshell, the United States asserts that defendant failed to comply with Section 404 of the Clean Water Act, 33 U.S.C. § 1344, by performing channel maintenance work without obtaining the necessary permits from the United States Army Corps of Engineers (hereinafter "the Corps"). Because the Clean Water Act is a complex statute, the Court believes a summary of the statutory and regulatory provisions upon which the United States relies is appropriate.

The Clean Water Act, as its fundamental goal, makes "the discharge of any pollutant" into the waters of the United States unlawful, unless the discharge is in compliance with one of several statutory schemes. 33 U.S.C. § 1311(a); Clean Water Act § 301(a). Under section 404 of the Clean Water Act, Congress delegated to the Secretary of the Army, acting through the Corps, the authority to issue permits for the "discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a); Clean Water Act § 404(a).[1] The United States contends that defendant should have sought a § 404 permit for its river channel maintenance. The validity of this contention depends upon the statutory and regulatory definitions of various terms, including "dredged material," "fill material," "discharge" of these materials, and "navigable waters."

The parties do not dispute that the Clean Water Act's definition of "navigable waters" applies to the Little Bighorn River. *See* Answer to Complaint, para. 12 (admitting the "legal conclusion" that the Little Bighorn River constitutes "waters of the United States").[2] Defendant's primary

---

**1.** While the Corps retains general administrative control of the § 404 permit program governing the discharge of dredge and fill materials into the nation's waters, the Environmental Protection Agency (EPA) assumes a "supervisory role in connection with the administration of § 404." *In re Matter of Alameda County Assessor's Parcels,* 672 F.Supp. 1278, 1284 (N.D.Cal.1987). Thus, the EPA, through the Department of Jus-

tice, brings this action under its supervisory powers.

**2.** Both the United States Supreme Court and the Ninth Circuit Court have endorsed a broad reading of the terms "navigable waters" and "waters of the United States" for purposes of Clean Water Act construction. *See United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 135, 106

contention is that the redeposit of indigenous riverbed material, and the removal of such material from a stream, do not constitute a "discharge of dredge or fill material" and therefore do not require a § 404 permit from the Corps.

The Corps has promulgated regulations defining the scope of its authority under the § 404 permit program. For purposes of this program, "dredged material" means "material that is excavated or dredged from waters of the United States." 33 C.F.R. § 323.3(i) (1986). A "discharge of dredged material" is defined in relevant part as:

> any addition of dredged material into the waters of the United States. The term includes, without limitation, the addition of dredged material to a specified discharge site located in waters of the United States.... The term does not include plowing, cultivating, seeding and harvesting for the production of food, fiber, and forest products.

33 C.F.R. § 323.2(j) (1986). By contrast, "fill material" means any material "used for the primary purpose of replacing an aquatic area with dry land or of changing the bottom elevation of an [*sic*] waterbody." 33 C.F.R. § 323.2(k) (1986). The term "discharge of fill material" refers to:

> the addition of fill material into the waters of the United States. The term generally includes, without limitation, the following activities: Placement of fill that is necessary for the construction of any structure in a water of the United States; the building of any structure or impoundment requiring rock, sand, dirt, or other material for its construction [including] ... dams and dikes; ... property protection and/or reclamation devices ... [and] levees.... The term does not include plowing, cultivating, seeding and harvesting for the production of food, fiber, and forest products.

33 C.F.R. § 323.2(1) (1986).

Defendant, in advancing its argument that it did not need to obtain a § 404 permit, seizes on the language of the regulations indicating that a "discharge" of dredged or fill material requires an *addition* of the material to the waterbody. Defendant also cites the language of the Clean Water Act itself which defines "discharge of a pollutant" to mean, in relevant part, "any *addition* of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A); Clean Water Act § 502(12)(A) (emphasis supplied). The government argues that a *redeposit* of indigenous materials satisfies the statutory and regulatory criteria which mandate issuance of a permit.

■ Thus, the issue before the Court is a relatively simple one: Does the rearrangement of indigenous materials in a riverbed, undertaken to cutoff high water channels, to protect riverbanks from accelerated erosion, and to maintain a river channel, require a party to obtain a permit from the Corps under § 404 of the Clean Water Act? After carefully considering the arguments of both parties against the factual, statutory, and regulatory background, the Court is now prepared to rule.

*Discussion*

A. Standards for Summary Judgment

Rule 56(c), Fed.R.Civ.P., provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

■ When cross-motions for summary judgment are filed, the normal implication is that no disputed issues of material fact exist and that the dispute may be decided as a matter of law. *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1417 n. 1 (9th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986). Nevertheless, the Court may not merely assume that no material factual is-

S.Ct. 455, 463–64, 88 L.Ed.2d 419 (1985) (finding that Clean Water Act protects "wetlands," as defined by the Corps, adjacent to navigable waterways); *Rybachek v. United States Environmental Protection Agency*, 904 F.2d 1276, 1285 (9th Cir.1990).

sues exist but must ascertain whether any material fact precluding summary judgment remains in contention. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir.1975); *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 649 n. 4 (9th Cir.1974).

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

In the case at bar, neither party seriously disputes the operative facts giving rise to this lawsuit. Instead, the parties disagree over what is required by the provisions of the Clean Water Act, and whether defendant's activities meet these requirements. The motions before the Court seek a ruling on liability under the Clean Water Act, reserving for later determination the appropriate penalty if defendant's liability is established. As such, the Court is faced with the limited task of construing the Clean Water Act in light of the agreed facts. Summary judgment on the issue of liability is therefore appropriate.

### B. Construction of the Clean Water Act

The intent of Congress in passing the Clean Water Act was "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132, 106 S.Ct. 455, 462, 88 L.Ed.2d 419 (1985) (citing 33 U.S.C. § 1251(a)). To implement this goal, Congress prohibited the discharge of any pollutants from point sources into the navigable waters of the United States, unless the discharge was approved by an agency charged with administering the Clean Water Act. 33 U.S.C. § 1311.

The Clean Water Act contains two important permit systems governing the discharge of pollutants from point sources. The Corps administers the permit system regulating dredging and filling activity, 33 U.S.C. § 1344 (Clean Water Act § 404); the EPA administers the National Pollution Discharge Elimination System (NPDES), 33 U.S.C. § 1342 (Clean Water Act § 402), which governs other discharges. Congress delegated broad regulatory authority to both of these agencies under the Clean Water Act. Because of this broad delegation of power to the agencies, courts have uniformly shown great deference to agency interpretations of the Act. *Rybachek v. United States Environmental Protection Agency*, 904 F.2d 1276, 1284 (9th Cir.1990); *see also Environmental Protection Agency v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 306–07, 66 L.Ed.2d 268 (1980) (requiring deference to agency interpretation of Clean Water Act). "An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." *Riverside Bayview Homes*, 474 U.S. at 131, 106 S.Ct. at 461; *accord Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 910 (5th Cir.1983); *United States v. Larkins*, 657 F.Supp. 76, 82 (W.D.Ky.1987), *aff'd*, 852 F.2d 189 (6th Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989).

### C. Redeposit of Indigenous Riverbed Materials Requires a § 404 Permit

In the case at bar, the United States contends that a redeposit of indigenous riverbed materials in the bed of the Little Bighorn River is subject to regulation under § 404 of the Clean Water Act. The government characterizes defendant's activities as dredging and filling, which requires a permit from the Corps. In reviewing this contention, this Court must defer to the government's interpretation of the strictures of the Clean Water Act if the interpretation is reasonable and not in conflict with the intent of Congress. *Riverside Bayview Homes*, 474 U.S. at 131, 106 S.Ct. at 461.

The case law uniformly holds that the operation of a bulldozer in a river channel constitutes a point source subject to regulation under § 404. *Avoyelles*, 715 F.2d at 922; *Larkins*, 657 F.Supp. at 85; *United States v. Tull*, 615 F.Supp. 610, 622 (E.D. Va.1983), *aff'd*, 769 F.2d 182 (4th Cir.1985), *rev'd on other grounds*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). Furthermore, there is an emerging consensus in the Circuit Courts that a redeposit of indigenous materials into the waters of the United States qualifies as an "addition" of pollutants to these waters, for purposes of enforcing the Clean Water Act.

The seminal case to hold that a redeposit of native materials into a wetland requires a § 404 permit is *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 910 (5th Cir.1983). In *Avoyelles*, the Fifth Circuit Court of Appeals found that the conversion of a Louisiana wetland from its forested state to a soybean farm without a § 404 permit violated the Clean Water Act. The defendant in *Avoyelles* had cleared the vegetation from the wetland, burned it, disced the ashes and remaining organic material into the soil, and constructed a drainage ditch. Specifically, the Fifth Circuit Court held that the word "addition," as used in the definition of "discharge" and "discharge of pollutant" under the Clean Water Act, may be reasonably understood to include "redeposit" of indigenous materials. *Id.*, at 923.

In reaching this conclusion, the Fifth Circuit Court conducted a detailed analysis of the Legislative History of the Clean Water Act and Congress's intent in passing the statute. This interpretation of the Act was subsequently adopted by the Eleventh Circuit Court of Appeals in *United States v. M.C.C. of Florida, Inc.*, 772 F.2d 1501 (11th Cir.1985), *vacated on other grounds*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 809 (1987), *"redeposit" analysis readopted on remand*, 848 F.2d 1133 (11th Cir.1988) *and* 863 F.2d 802 (11th Cir.1989). In *M.C.C. of Florida*, the Court found that redeposit of sediment, which was dredged by the propellers of tugboats moving construction barges and which destroyed sea grass beds, clearly disturbed the physical and biological integrity of the subject waterway. *Id.*, at 1506.

Finally, in a recent case brought by the EPA for violation of the NPDES, 33 U.S.C. § 1342, the Ninth Circuit Court adopted the Fifth Circuit's conclusion in *Avoyelles* that the term "addition" in the definition of "discharge" under the Clean Water Act is broad enough to include "redeposit" of native materials. *Rybachek v. United States Environmental Protection Agency*, 904 F.2d 1276, 1285–86 (9th Cir.1990). The Ninth Circuit Court explicitly decided to "follow the lead of the Fifth and Eleventh Circuits and defer to the EPA's interpretation of the word 'addition' in the Clean Water Act." *Id.*, at 1286. Although *Rybachek* concerned an enforcement action under § 402 of the Clean Water Act, the decision unambiguously endorses the *Avoyelles* decision requiring a § 404 permit for redeposit of indigenous materials in a streambed.

Thus, if defendant's redeposit of indigenous materials in the bed of the Little Bighorn River meets the definition of a "discharge of dredged or fill material," it must be held liable under the Clean Water Act for failure to obtain a § 404 permit.

### D. Defendant Discharged "Fill Material" into the Little Bighorn River

The undisputed facts before the Court show that defendant redistributed river cobble and other materials from the bed of the Little Bighorn River, thereby cutting off high water channels and river meanders and protecting streambanks from accelerated erosion. In undertaking this activity, defendant necessarily constructed artificial barriers in the river channel. *See, e.g.*, Deposition of Richard M. Torrens, at 46, 51–52, 56–58.

The Corps' definition of fill material includes "*any* material used for the primary purpose of replacing an aquatic area with dry land." 33 C.F.R. § 323.2(k) (1986) (emphasis supplied). The regulation does not distinguish between indigenous material and foreign materials. In this case, the facts clearly indicate that defendant's activ-

ities cutoff river channels, which qualify as aquatic areas under the Clean Water Act's broad definition of navigable waterways.[3]

A "discharge of fill material" requires a § 404 permit if the material is used in the construction of "any structure in a water of the United States," including land "reclamation devices" to protect property. 33 C.F.R. § 323.2(1) (1986). Defendant admits that it redistributed and redeposited indigenous river materials along the banks of the Little Bighorn River, thereby protecting of its property from accelerated erosion.[4]

The facts show that defendant (1) discharged (*i.e.*, redeposited) (2) a pollutant (fill material) (3) into navigable waters (4) without a § 404 permit, in violation of the Clean Water Act. *See* 33 U.S.C. § 1311(a). As a result, the Court must find defendant liable for violation of this statute. *Avoyelles,* 715 F.2d at 924–25; *M.C.C. of Florida,* 772 F.2d at 1506.[5]

█ In so ruling, the Court agrees with the United States that defendant's intent in redepositing fill materials is irrelevant to the Court's determination of liability under the Clean Water Act. The regulatory controls of the Clean Water Act "were written without regard to intentionality ..., making the person responsible for the discharge of any pollutant strictly liable." *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir.1979); *see also Minnehaha Creek Watershed Dist. v. Hoffman,* 597 F.2d 617, 627 (8th Cir.1979) (party's lack of intent to pollute irrelevant). The Court is bound to follow this strict liability standard, even though it recognizes that many Montana farmers, ranchers, and other landholders may now need to

seek § 404 permits for the land protection work they have engaged in for years without regulation. The Court also notes, however, that these landholders may still be able to protect their property; they simply need to obtain a permit from the Corps to do so.

For the foregoing reasons,

IT IS ORDERED that the United States' Motion for Partial Summary Judgment is granted, and defendant's Motion for Partial Summary Judgment is denied.

IT IS FURTHER ORDERED that the parties shall appear before this Court for a status conference to discuss further proceedings in this case on Friday, January 18, 1991, at 9:30 o'clock a.m.

The Clerk is directed not to enter judgment until all matters currently before the Court are resolved.

---

**3.** *See* Note 2, *supra,* and cases cited therein, discussing the expansive definition of navigable waterways under the Clean Water Act.

**4.** Because it finds that defendant discharged fill material into the waters of the Little Bighorn River, the Court need not consider whether defendant unlawfully dredged the bed of the River without a § 404 permit.

**5.** Defendant attempts to refute this finding by reference to three cases: *National Wildlife Federation v. Consumers Power Co.,* 862 F.2d 580 (6th Cir.1988); *National Wildlife Federation v. Gorsuch,* 693 F.2d 156 (D.C.Cir.1982); and *Ash-*

*croft v. Department of Army,* 672 F.2d 1297 (8th Cir.1982). These cases involved questions concerning whether discharges from existing dams and hydroelectrical facilities required NPDES permits under § 402 of the Clean Water Act. The Courts found that discharges of indigenous riverborne materials did not require permits. This Court specifically distinguishes these cases as inapposite. The cases cited by defendant concerned a separate regulatory framework under Clean Water Act, and they examined the impacts of *existing* structures, not the construction of new ones, on the nation's waterways.