**Willie JAMES and Betty Jean James, Plaintiffs,**

v.

**Hubert H. RAGIN, Defendant.**

No. C–C–75–348.

United States District Court,
W. D. North Carolina,
Charlotte Division.

May 17, 1977.

Louis L. Lesesne, Jr. and James C. Fuller, Jr., Chambers, Stein, Ferguson & Becton, Charlotte, N. C., for plaintiffs.

James H. Morton, Jr. and Ralph C. Clontz, III, Clontz & Morton, Charlotte, N. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

This action was tried by the court on February 24, 1977. The court heard further legal arguments on March 15, 1977. Plaintiffs were represented by Louis L. Lesesne, Jr. and James C. Fuller, Jr., of Chambers, Stein, Ferguson and Becton. Defendant was represented by James H. Morton, Jr. and Ralph C. Clontz, III, of Clontz and Morton. After consideration of the testimony and briefs and argument of counsel, the court, as required by Rule 52, F.R. Civ.P., enters the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

1. Hubert Ragin's wife, Lee V. Ragin, was named as an additional defendant. However, Mrs. Ragin died after the trial of the case.

## FINDINGS OF FACT

1. Plaintiffs, Willie A. James and Betty Jean James, are natural persons who reside in Mecklenburg County, North Carolina. They are husband and wife.

2. Defendant, Hubert Ragin [1] is a resident of Mecklenburg County, North Carolina, who is engaged in the business of buying and selling real estate. He both acts as an agent for buyers and sellers of residential real estate and purchases and sells residential real estate for his own gain. Since beginning his real estate business in North Carolina in 1971, Ragin has purchased at least 47 houses in his own name for re-sale.

3. As compensation for his services as an agent for buyers and sellers, defendant regularly receives a fee which is computed as a percentage of the sale price in a particular transaction. Those transactions involving the sale and purchase of residential property in which defendant is involved, either as principal or agent, regularly involve the extension of credit for all or part of the purchase price.

4. As part of the services performed as agent for purchasers of real estate, defendant regularly assists such purchasers in obtaining credit by referring purchasers to lending institutions for the extension of credit.

5. Defendant has been aware of the existence of the federal Truth-in-Lending Act in connection with his real estate business.

6. On at least 10 occasions since defendant commenced his real estate business, he has made loans to the purchasers of homes he was selling and has taken a second deed of trust to secure each loan.

7. In 1973 plaintiffs purchased a house and real property located at 1007 Georgetown Drive in Charlotte, North Carolina. Defendant acted as the real estate agent for plaintiffs in that sale.

8. At all times since the purchase of that property by plaintiffs in 1973, the plaintiffs have resided there and have used it as their principal residence.

Inasmuch as her presence was necessary solely for the purpose of relief, no substitution of parties will be effected.

9. When plaintiffs purchased that property, they assumed an existing deed of trust on the property. That deed of trust constituted a first lien on the property and secured a note held by Wachovia Mortgage Company. At the time of the purchase, plaintiffs also executed a promissory note and a deed of trust in favor of United Virginia Mortgage Company (hereinafter "United Virginia").

10. In late 1973 or early 1974, plaintiffs became delinquent in their obligation to United Virginia, and the trustee for United Virginia foreclosed on the second deed of trust. At the trustee's sale, the property was purchased by United Virginia, for the amount of the outstanding principal and interest due, plus the costs associated with the foreclosure. Title to the property vested in United Virginia, subject to the continued validity of the first deed of trust held by Wachovia.

11. Plaintiffs talked with the attorney representing United Virginia and learned that they could re-purchase the property for the amount which United Virginia had expended. Plaintiffs were anxious that they not lose their home and began looking for a source of money.

12. Plaintiffs consulted numerous potential lenders for the purpose of securing a loan to re-purchase the property from United Virginia. None of these efforts was successful.

13. Plaintiffs subsequently approached defendant for the purpose of borrowing the necessary amount from Ragin. Defendant, after some negotiation, agreed to supply the money that plaintiffs needed to re-purchase their house.

14. Defendant prepared a document which he presented to plaintiffs for their signatures. Plaintiffs had no voice in the preparation of the agreement submitted to them by Ragin; it was presented to them on a "take it or leave it" basis.

15. The agreement stated that plaintiffs would sell the property to defendant, that plaintiff would pay rent for six months, and that after plaintiffs paid rent for six months, defendant would re-sell the property to plaintiffs on the payment of an additional consideration.

16. Under the terms of the agreement, the original "sale price" to defendant was $22,457.21, which equaled (1) the amount necessary to re-purchase the property from United Virginia ($6,165.40) and (2) the outstanding principal on the first mortgage to Wachovia ($16,291.81). This amount was between $1,500 and $4,500 less than the fair market value of the property at the time of the transaction.

17. The monthly "rent" which plaintiffs were required to pay was $254.10, out of which defendant made the monthly payments to Wachovia Mortgage Company on the first deed of trust in the amount of $154.10 per month, leaving a balance of $100.00 per month as a return to defendant.

18. The agreement further stated that the re-sale price at the end of six months was $23,457.21, or $1,000.00 more than the original purchase price.

19. The net effect of the agreement was that defendant would realize $1,600.00 over a period of six months for the loan to plaintiffs of $6,165.40, a return of more than 50 percent.

20. Even though the agreement took the form of a contract for sale, rent and option to re-purchase, the court finds that it was the mutual intent and understanding of the parties that the transaction was a loan, the granting of which was conditioned on plaintiffs' executing an absolute deed. The deed from plaintiffs to the defendant furnished the security for the loan. If plaintiffs defaulted in repaying the loan, defendant could keep the property without the necessity of instituting foreclosure proceedings. This conclusion is based on the circumstances surrounding the transaction and all the evidence at the trial including the testimony of the defendant who himself once or twice characterized the transaction as a "loan" during the trial.

21. Because the transaction was a loan plaintiffs had a continuing obligation to repay, even though the obligation to repay was nowhere explicitly stated in writing. Failure to repay would have drastic consequences to them.

22. Prior to executing the papers necessary to complete the transaction, plaintiffs sought the advice of an attorney. The attorney advised them that the form of the agreement and the interest rate were unconscionable. He further advised them, however, that their choices were limited either to acquiescing in the agreement or losing their home.

23. In effecting the transaction the defendant wrote a check on May 28, 1974, to United Virginia for the amount of $6,165.40. United Virginia executed a warranty deed conveying the property to plaintiffs. Plaintiffs then immediately executed a warranty deed, conveying the property to defendant. The original agreement was then re-executed.

24. Defendant never gave plaintiffs any disclosure or notice of their right to rescind the transaction, nor did Ragin give them any disclosure that the transaction was subject to § 125 of the Truth-in-Lending Act, 15 U.S.C. § 1635, or Regulation Z, of the Federal Reserve Board, 12 C.F.R. § 226.9.

25. Plaintiffs were permitted to continue to live in the property, and they have continued to live there through the time of trial. They made the $254.10 payment to defendant each month through October 1975. Payments through that date totaled $4,319.70.

26. On October 31, 1975, plaintiffs' attorney wrote defendant, giving notice that plaintiffs were rescinding the May 28, 1974, transaction pursuant to provisions of the Truth-in-Lending Act.

27. The letter stated in part: "[Y]ou are required to return to the James', within 10 days of receipt of this letter, all money paid by them to you since May 28, 1974. In addition, you are required to take action necessary to reflect the termination of your security interest. In this case, this would be accomplished by reconveying the property to the James' by a general warranty deed."

28. The defendant took no action in response to the October 31 letter. There was no allegation in the pleadings or evidence at trial which would suggest or support a conclusion that defendant's inaction was based on any position except Ragin's contention (which was vigorously pressed at trial) that the transaction was not subject to the Truth-in-Lending Act. Specifically, there was no evidence that defendant took issue with the sufficiency or propriety of the notice of rescission.

29. Since receipt of plaintiffs' letter of rescission the defendant has continued to make the monthly mortgage payments to Wachovia Mortgage Company in the amount of $154.10. These payments (for 17 months) total $2,619.70.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter pursuant to 15 U.S.C. §§ 1640(e) and 1635(f).

2. Plaintiffs are "customers," as the term is used in Regulation Z, 12 C.F.R. § 226.9, being natural persons to whom credit is extended. 12 C.F.R. § 226.2(u)(2).

3. Defendant Hubert Ragin is a "creditor," as defined in 15 U.S.C. § 1602(f) and 12 C.F.R. § 226.2(s). The definition of "creditor" includes:

"creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise."

4. Defendant testified that on at least 10 occasions in 5 years he had taken promissory notes and second deeds of trust to finance portions of the purchase price of homes that he had sold. Defendant's activities in extending credit on his own behalf sufficiently involves him in the credit business to make him subject to the Act.

5. A factual situation similar to this case was presented in *Eby v. Reb Realty Co.*, 495 F.2d 646 (9th Cir. 1974), in which a realtor questioned his status as a "creditor." Even though the defendant in *Eby* had extended credit on only three occasions in 19 months, such involvement was held sufficient to subject it to coverage under the Act.

6. The court concludes, consistent with *Eby*, that the definition of "creditor" should be applied so as to exclude only those who make "isolated and incidental" extensions of credit. Defendant's activities do not fit within such an exclusion. His personal extension of credit was a regular though intermittent part of his business, and he was acquainted with the requirements of the Truth-in-Lending Act. He is, therefore, subject to the Act.

7. The issue whether the transaction in this case involved consumer credit, as defined by 12 C.F.R. § 226.2(p), and whether the defendant held a security interest, as defined by 12 C.F.R. § 226.2(gg), must be determined consonant with the purpose of Congress evidenced by the Act, *N. C. Freed Co., Inc. v. Board of Governors*, 473 F.2d 1210 (2nd Cir. 1973), *cert. den.*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61.

8. In construing the Act the court should look at the substance of the transaction involved and not simply the form. *Meyers v. Clearview Dodge Sales Inc.*, 539 F.2d 511, 515 (5th Cir. 1976). Indeed, Congress has recognized that "some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973).

9. The Federal Reserve Board has defined "security interest" or "security" as: "any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation." 12 C.F.R. § 226.2(gg).

10. The Federal Reserve Board definition evinces an intent to give a broad and remedial scope to the meaning of security interest. As the Court said in *N. C. Freed Co. Inc. v. Board of Governors*, 473 F.2d at 1214, "form should be disregarded for substance and the emphasis should be on economic reality," quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). See also, *Gardner and North Roofing and Siding Co. v. Board of Governors*, 150 U.S.App.D.C. 329, 464 F.2d 838 (1972).

Considering the economic realities of the situation that plaintiffs were in, the intentions of the parties and the substance of the transaction in question, I conclude that the transaction was a loan with a security interest, not a sale with an option to repurchase.

11. In addition, I conclude that the transaction involved an extension of credit and a deed of trust under the law of North Carolina.[2] Like cases decided under the Truth-in-Lending Act, North Carolina cases have held that in transactions such as the present one the substance, not the form, determines the true character of a transaction.

12. The test, under North Carolina law, for determining whether a conveyance with an option to repurchase represents a true sale or merely a loan and security interest, focuses on the intent of the parties and not the form of the transaction. *O'Briant v. Lee*, 214 N.C. 723, 200 S.E. 865 (1939); *McKinley v. Hinnant*, 242 N.C. 245, 251, 87 S.E.2d 568 (1955).

13. In determining whether a transaction is a sale or loan, the North Carolina Supreme Court has identified the following pertinent factors:

(a) Whether there was a debtor-creditor relationship created at the time of the transaction. *Hardy v. Neville*, 261 N.C. 454, 457, 135 S.E.2d 48 (1964). The fact

---

2. Although the claim is one arising under federal law, reference to state law is appropriate to determine whether the transaction fits into one of the categories set out in § 226.2(gg).

that there is no written instrument evidencing a debt is not dispositive. Indeed, "when the purpose of the creditor is to avoid the appearance of a mortgage, . . . it is not to be expected that he would defeat it by the introduction of an express covenant for the payment of the money or any other independent security disclosing its existence." *O'Briant v. Lee*, 214 N.C. at 733 [200 S.E. 865].

(b) Whether the "grantor" remains in possession. *Hardy v. Neville*, 261 N.C. at 457, 135 S.E.2d at 51.

(c) Whether the "grantor" was under distress and hard-pressed for money at the time of the transaction. *O'Briant v. Lee, supra; Hardy v. Neville*, 261 N.C. at 457, 135 S.E.2d at 51.

(d) Whether the transaction originated out of an application for a loan. *O'Briant v. Lee*, 214 N.C. at 733, 200 S.E. at 871.

(e) Whether the purported sale price is less than the worth of the property. *O'Briant v. Lee*, 214 N.C. at 733, 200 S.E. at 871.

14. Doubts as to whether the transaction is a sale or a mortgage are to be construed in favor of a mortgage, in order to prevent the possibility of oppression created by an outright sale. *O'Briant v. Lee*, 214 N.C. at 732, 200 S.E. at 869; *McKinley v. Hinnant*, 242 N.C. at 252, 87 S.E.2d at 573.

15. Considering the foregoing factors as well as the entire record, the court concludes that the transaction here represented a loan under both North Carolina and federal law and that the deed from plaintiffs to defendant represented a security interest in the property, securing the repayment of a loan from defendant to plaintiffs. 12 C.F.R. § 226.2(gg).

16. Because the loan principal was used for the repurchase of plaintiffs' home, the transaction involved "consumer credit." 12 C.F.R. § 226.2(p).

17. Because the transaction involved the taking of a security interest in real property used as plaintiffs' principal residence, defendant was required to give plaintiffs notice of their right to rescind the transaction within three business days after consummation of the agreement. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.9(a).

18. Because defendant failed to give plaintiffs the required disclosure of their right to rescind, the right to rescind continued for three years after May 28, 1974. 15 U.S.C. § 1635(f).

19. Once plaintiffs gave notice of rescission in October 1975, defendant was required to return to plaintiffs "any money given as earnest money, downpayment or otherwise" and to "take any action necessary to or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). The defendant took no action to rescind the transaction.

20. Plaintiffs did not make unreasonable demands in their October 21, 1975, letter of rescission. Literally read, the provisions of § 1635(b) entitle plaintiffs to a refund of all payments made between May 1974 and October 1975, including those amounts paid by Ragin to Wachovia. See *Sosa v. Fite*, 498 F.2d 114, 120 (5th Cir. 1974).

21. Plaintiffs did not commit an anticipatory breach of the agreement. Unlike the creditor in *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976), defendant introduced no evidence that tended to show that the Jameses intended to refuse to repay Ragin the money actually used to pay off the two deeds of trust on their home.

In addition, defendant offered no proof that his failure to comply with the request to rescind was based on plaintiffs' unwillingness to repay any money actually expended by defendant on plaintiffs' behalf. Within the ten days that 15 U.S.C. § 1635(b) gives the creditor to respond to the debtor's request to rescind defendant made no demand that plaintiffs return the money that defendant paid to the United Virginia Mortgage Company and made no offer to return all money but the money paid to Wachovia. Instead, defendant maintained throughout that plaintiffs were not entitled to rescission on any terms. Consequently,

*Powers* is not controlling on the facts of this case. Here there was no anticipatory breach to defeat the effort to rescind.

22. Nonetheless, rescission is an equitable remedy and equity requires that those amounts paid by defendant to Wachovia Mortgage Company not be refunded to plaintiffs. *Powers v. Sims and Levin*, 542 F.2d at 1221.

23. The additional $100.00 per month which plaintiff paid to defendant stands on another foot, however. The Act defines "finance charge" as

"... the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit ..."
15 U.S.C. § 1605(a).

The monthly charge of $100.00 fits within this statutory definition, and 15 U.S.C. § 1635(b) expressly provides that, upon rescission, the debtor "is not liable for any finance or other charge." Thus, plaintiffs are entitled to a return of the $1,700.00 in "finance charges" which they have paid to the defendant.

24. Plaintiffs are required by 15 U.S.C. § 1635(b) to return to defendant $6,165.40, the amount lent to plaintiffs by defendant.

■ 25. Plaintiffs are entitled to an award of the statutory penalty and to the costs of the action and to reasonable attorney fees and expenses pursuant to 15 U.S.C. § 1640(a).[3] That statute provides for penalties, costs and attorney fees in case of "any creditor who fails to comply with any requirement imposed under this part [Part B, encompassing 15 U.S.C. § 1631–1644] or Part D of this subchapter [Credit Billing]." The rescission provisions contained in 15 U.S.C. § 1635 are among the requirements

"imposed under this part" and defendant's inaction upon receiving notice of rescission represents a failure to comply.

26. Under the applicable statutory provision, 15 U.S.C. § 1640(a)(2)(A), prevailing plaintiffs are entitled to a penalty in the amount of twice the finance charge up to a maximum penalty of $1,000.00. In this case, plaintiffs are entitled to the maximum penalty of $1,000.00.

27. Plaintiffs are entitled to a deed conveying the property to them upon the payment of $6,085.10 which is computed on the following basis: Plaintiffs are entitled to a credit of $1,000.00 statutory penalty and $1,700.00 finance charge paid between May 1974 and October 1975. Defendant is entitled to $8,785.10, consisting of the original principal of $6,165.40 and 17 months' payments (November 1975 to March 1977) to Wachovia Mortgage Company at $154.10 per payment.

28. Defendant alleged a counterclaim, seeking to eject plaintiffs from the premises. Because of the court's conclusion that the relationship was one of debtor-creditor, rather than landlord-tenant, the counterclaim will be dismissed.

29. A judgment will be entered consistent with the foregoing findings and conclusions.

## JUDGMENT

After a trial before the court, and after the entry this day of findings of fact and conclusions of law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Plaintiffs Willie James and Betty Jean James are required to pay defendant Hubert Ragin the sum of $6,085.10.

---

**3.** 15 U.S.C. § 1640(a) was amended in 1974 and its effective date was October 28, 1974, after this transaction was consummated but before the litigation was commenced. Section 408(e) of P.L. 93–495, which amended § 1640(a), provided:

"The amendments made by [section] 408 [enacting subsec. (h) of 15 U.S.C. § 1640 and amending subsecs. (a), (b), and (c) of this section] shall apply in determining the liability of any person under chapter 2 or 4 of the Truth in Lending Act [this part or Part D of this subchapter] unless prior to the date of enactment of this Act [October 28, 1974] such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise."

2. Plaintiffs are given ninety (90) days from the entry of this judgment to tender the amount set out above.

3. If conveyance of the property to a lender is needed in order for plaintiffs to get the money to pay defendant, then defendant will make that conveyance at plaintiffs' request.

4. At the time said payment is made defendant will convey to plaintiffs by warranty deed the real property located at 1007 Georgetown Drive, Charlotte, North Carolina, described in more detail in a deed recorded in Book 3678, page 745, in the office of the Register of Deeds of Mecklenburg County, subject to the first deed of trust held by Wachovia Mortgage Company.

5. Plaintiffs are awarded their costs in this action, including reasonable attorney fees and expenses in the amount of $6,381.14 as indicated in the order awarding fees, filed concurrently with this judgment.

6. Defendant's counterclaim is dismissed with prejudice.

## ORDER

Plaintiffs have petitioned for attorneys' fees and support that petition with affidavits showing services rendered and time spent by plaintiffs' attorneys working on the case and an affidavit of another attorney experienced in Truth-in-Lending cases. Defendants have not submitted any response.

On the basis of the documents in the record and my personal observations of the performance of the attorneys in this case, I make the following findings:

1. Plaintiffs' attorneys spent about 125 hours working on this case. The great bulk of the time was spent by Mr. Lesesne, and the time spent by Mr. Wallas and Mr. Fuller was not duplicative. The time was spent doing legal as opposed to clerical or investigative work.

2. The action was brought under the Truth-in-Lending Act, 15 U.S.C. §§ 1640 et seq. The question whether defendant is a "creditor" as that term is used in the Act is apparently novel in this circuit. The characterization of the transaction in question is a problem of first impression.

3. The case was prepared carefully, completely, and skillfully. The legal issues and the facts were presented to the court clearly and concisely.

4. Plaintiffs' attorneys are experienced and respected trial attorneys with considerable experience in federal litigation including cases under the Truth-in-Lending Act.

5. The fee in the case was totally contingent on plaintiffs' prevailing.

6. Plaintiffs' attorneys expended $73.64 for postage, photocopying, filing fee, marshal's fee and long-distance telephone.

7. Considering the complexity of the case, the skill with which it was handled, and other factors as listed above, an award of attorneys' fees of approximately $50.00 per hour spent on the case is reasonable.

IT IS THEREFORE ORDERED that plaintiffs recover costs, expenses, and attorneys' fees in the amount of $6,381.14.