**Georgia VON SCHMIDT**

v.

**Mark M. KRATTER, et al.**

**No. 3:95cv1734 (JBA).**

United States District Court,
D. Connecticut.

Sept. 30, 1997.

Order Denying Reconsideration,
June 4, 1998.

---

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court will not render summary judgment if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996).

**Background**

For the purposes of this motion, the court relies on the following undisputed facts. In November 1994, Georgia Von Schmidt sought services from the Moore Center for Rehabilitation. At the time of her first visit, Von Schmidt was asked to fill out and sign certain forms. One of these forms, entitled "Office Procedures," contained the statement, "If, in the event your account is referred to a third-party for collections, you will be responsible for all charges up to the statutory limit." Ex. E, Plaintiff's Statement of Facts. Before signing the form, Ms. Von Schmidt drew a line through this statement indicating her nonacquiescence. Plaintiff was subsequently billed $125.00 for the services she received.

In May 1995, Von Schmidt received a letter signed by defendant Mark M. Kratter, of the Carron & Fink law firm, indicating that, "The Moore Center for Rehabilitation, P.C. has placed you with us for collection [of] a claim against you in the amount indicated above.... If a judgment is obtained against you, you may be required to pay court costs, attorney's fees, sheriff's fees and additional interest charges in addition to the sums now owed by you." Ex. A, Plaintiff's Statement of Facts.

In the years 1994 through the present, the firm of Carron & Fink has had only one consumer credit client, the Moore Center for

Joanne Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Plaintiff.

Andrew F. Fink, Carron & Fink, Westport, CT, for Defendants.

*RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. # 18]*

ARTERTON, District Judge.

The plaintiff, Von Schmidt brings this action against defendant attorneys to recover for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. After conducting discovery on this matter, plaintiff has filed a motion for summary judgment.

The court will render summary judgment only if the factual record shows "that there is

Rehabilitation. The Moore Center was a client from May 1994 until April 1996. Aff. of Mark S. Carron, ¶ 4. The total receipts from the Moore Center were $29.30 in 1994, $328.21 in 1995, and $450.28 in 1996. Aff. of Mark S. Carron, ¶ 4. In 1994, of 240 new files representing new clients or new matters for established clients, 21 were opened for the Moore Center. Aff. of Mark S. Carron, ¶¶ 5–6. In 1995, of 250 total files, 8 were opened for the Moore Center. Aff. of Mark S. Carron, ¶¶ 5–6.

### Discussion

Plaintiff's belief is that the defendants violated the Fair Debt Collection Practices Act by sending her a letter that, she contends, incorrectly stated she could be liable for attorney's fees.[1] Defendants respond that they are not debt collectors for the purposes of the Act. Alternatively, they contend that the demand, assuming it was false or misleading, was a bona fide error exempt from liability under 15 U.S.C. § 1692k(c).

In 1977, Congress enacted the Fair Debt Collection Practices Act to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). The Act defines "debt collector" as:

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The original statute excluded attorneys from this definition, but in 1986, Congress repealed that section of the Act. Pub.L. 99–361, 100 Stat. 768, 15 U.S.C. § 1692a(6). The Supreme Court subsequently held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

Plaintiff argues that defendants' activities constitute "regular" debt collection activity such that it places the defendants within the ambit of the statute. She first argues that the defendants' "direct" debt-collection activities are of such quantity that they meet the regularity requirement. Alternatively, she argues that the defendants' "indirect" debt-collection activities meet this requirement.

As described above, defendants' direct debt-collection activities were confined to those cases relating to the Moore Center for Rehabilitation. Between 1994 and 1995, 29 new files were opened in debt-collection cases, or approximately 6% of the total caseload over two years. The total amount collected in receipts for this work from 1994 through 1996 was $807.79.

In determining whether activity constitutes "regular" debt-collection, courts have looked to the sheer volume of the law firm's practice devoted to debt collection, *Nance v. Petty, Livingston, Dawson, & Devening*, 881 F.Supp. 223, 225 (W.D.Va.1994); the number of debt-collection cases filed as an percentage of all cases filed, *Crossley v. Lieberman*, 868 F.2d 566, 569 n. 2 (3d Cir.1989); and the frequency of use of the collection practices in question, *Cacace v. Lucas*, 775 F.Supp. 502, 504 (D.Conn.1990).

Courts have found that law practices with 70–80% of their legal fees generated through debt-collection work to be "debt collectors" for the purposes of the Act. *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir.1992) ("Deposition testimony revealed that at least 70–80% of Jones' legal fees were generated in relation to legal work performed toward the collection of debts."). In another case, an attorney who had filed 144 small claims suits in collection matters, ten additional collections actions, had used the collection letter in question 125 to 150 times, and had an ongoing professional relationship with the collection client was also found to be a person who regularly collects debts within the meaning of the statute. *Cacace*, 775 F.Supp. at 505.

At the other end of the continuum, in a case in which the defendants averted that "debt collection made up only 1.07% of the firm's cases," the court found that the defen-

---

1. Under the Act, a debt collector may not give a false representation of "the character, amount, or legal status of any debt; or ... any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(A)–(B).

dants were not debt collectors as a matter of law. *Nance*, 881 F.Supp. at 225. Similarly, where debt collecting practice made up less than 1% of a firm's total practice, the court found that an attorney was not a debt collector. *Mertes v. Devitt*, 734 F.Supp. 872, 874 (W.D.Wis.1990). *See also Hartl v. Presbrey & Assoc.*, 1996 WL 529339 (N.D.Ill.1996) (firm with less than .2% of practice in debt collection not a debt collector).

 The determination of regularity is not made pursuant to any bright line test. This case, however, is closer to those in which the conduct was considered to not rise to the status of "regular" debt collection. In 1994, the year that plaintiff received the disputed letter, 10% of the defendants' new files opened were direct debt collection cases for Moore Center. This was the high-point of the firm's collection cases. The next year, new debt collection files were 3% of total new files opened. Taken as an overall percentage over the two years, 6% of the firm's new cases were debt-collection related. Nor did these cases constitute a large source of revenue for the firm. In 1995, the firm had gross receipts of $493,925.29. Over the three years that the Moore Center was a client, the total receipts from the debt collection practice were $807.79.[2]

There are many quantitative and qualitative factors that a court could look to in determining the regularity of a defendant's debt-collecting activities, although a paucity of caselaw construing the meaning of "regular." Some courts have found a single factor standing alone to be determinative. *See Scott*, 964 F.2d 314 (percent of legal fees generated by debt collection dispositive). If no single factor predominate, courts should look to the overall circumstances on a case-by-case basis to make this determination. The Court notes at the outset that attorneys occupy a unique position. They are sworn to uphold the law, and they can commence legal actions against alleged debtors. Therefore, their activities bear careful scrutiny. If the percentage of new cases opened in a given year were the sole measure of regularity, the

Court might conclude that 10% of new cases in a given year is significant enough to warrant a finding of regularity. However, other factors may be equally important and, at a minimum, provide a meaningful context for the "regularity" determination. The relationship between the defendants and the Moore Center lasted only three years, and thus was not a long-term course of dealing albeit with only one client. The overall volume of cases accepted from this client during the three years comprised a small portion of the overall caseload. Finally, the gross receipts from this activity constituted very minimal percentage of the firm's total revenues.

There is nothing in the record to explain why the scope of the defendants' debt-collection cases with this client was so small. The defendants may have had aspirations to a larger debt collection business, but found it to be economically infeasible. On the record before the court, however, this case demonstrates at most that the defendants were attempting to establish a debt collection practice, but after examination of all measuring criteria, the court concludes that defendant's direct debt-collection activities never reached the status of regular debt collection as required by the Fair Debt Collection Practices Act.

 Plaintiff argues in the alternative that if the direct debt-collection activities of the firm are not enough to bring them within the Act, then the firm's "indirect" debt-collection activities should. Defendants' practice includes worker's compensation, bankruptcies, personal injury claims, divorce, probate, and residential real estate closings. Plaintiff argues that "[e]ach type of practice listed above involves, to a greater or lesser extent, paying or arranging for payment of secured debts (such as vehicle loans), medical and other personal debts." Pl.'s Mem at 12. Essentially, plaintiff contends that because these cases often involve payment by the defendants of debts owed by their clients to other parties with the clients' money, this is indirect debt collection. For example, a client who has sought the firm's help on a

---

**2.** The defendants received 22½% of all money collected from various debtors. Ex. H, Plaintiff's Statement of Facts. Using this rate a basis, the defendant's collected a total of $3,590.17 in debts.

personal injury case may authorize the firm to pay medical bills out of the proceeds from a settlement. The fact that the defendant has "collected" the medical bill from the client is asserted to be "indirect" debt collection.

The court disagrees with this analysis. The Fair Debt Collection Practices Act was intended to protect consumers from the abusive behavior of debt collectors. 15 U.S.C. § 1692(e). The "indirect" debt-collection activities described above are performed by lawyers at the direction of their clients, or in their clients' interests. Lawyers have a pre-existing obligation to serve their clients interests, and to refrain from abusive practices towards their clients. *See, e.g., Conn. Rules of Professional Conduct* Rule 1.7 cmt., as adopted by D.Conn.R. 3 (1994) ("Loyalty is an essential element in the lawyer's relationship to a client."). There are many kinds of indirect debt collection activities taken at the behest of a creditor-client, to the detriment of a debtor, but those are not at issue here. It would not be within the purposes of the Act for activity undertaken pursuant to the directions of a client or in the interests of a client to constitute debt collection from that client subject to the restrictions of the Fair Debt Collection Practices Act.[3]

### Conclusion

Accordingly, defendants' activities do not constitute regular debt collection activity sufficient to make them debt-collectors within the meaning of the Act.

For the foregoing reasons, the plaintiff's Motion for Summary Judgement [doc. #18] is DENIED.

IT IS SO ORDERED.

### RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION
### [DOC. #37]

This is an action brought under the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692. In a September 30, 1997 ruling, the court denied plaintiff's Motion for Summary Judgment. Plaintiffs filed the instant Motion for Reconsideration requesting that the court reconsider in light of the decision in *Garrett v. Derbes,* 110 F.3d 317 (5th Cir.1997) and *Tragianese v. Blackmon,* 993 F.Supp. 96 (D.Conn.1997).

The Second Circuit has stated that reconsideration is appropriate only under certain conditions: an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice. *United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994). Although the court concludes that none of these bases for reconsideration is present here, the court writes to clarify its September 30, 1997 ruling.

Plaintiff contends that the court's ruling is in conflict with the decision of the Fifth Circuit in *Garrett v. Derbes,* 110 F.3d 317 (5th Cir.1997) and the decision of a fellow Connecticut District Court in *Tragianese v. Blackmon,* 993 F.Supp. 96 (D.Conn. 1997). In *Garrett,* the defendant, a law firm, mailed approximately 639 demand letters in a nine month span. The court explained that "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity." 110 F.3d at 318. This is not inconsistent with this court's summary judgment ruling. As the court explained,

> [I]f the percentage of new cases opened in a given year were the sole measure of regularity, the court might conclude that 10% of new cases in a given year is significant enough to warrant a finding of regularity. However, other factors may be equally important and, at a minimum, provide a meaningful context for the 'regularity' determination. The relationship between the defendants and the Moore Center lasted only three years, and thus was not a long-term course of dealing al-

---

**3.** Section 1692(6)(E) excludes from the definition of "debt collector" "any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payment from such consumers and distributing such amounts to creditors." Plaintiff argues that this section requires a finding that all others engaged in this kind of activity are debt collectors within the ambit of the Act. While this provision may be suggestive of what kinds of situations Congress did or did not consider, it does not follow that this one exclusion creates a rule.

beit with only one client. The overall volume of cases accepted from this client during the three years comprised a small portion of the overall caseload. Finally, the gross receipts from this activity constituted a very minimal percentage of the firm's total revenues.

*Von Schmidt v. Kratter*, No. 3:95cv1734 (JBA) (D.Conn. filed Sept. 30, 1997). Just as the Fifth Circuit looked beyond the single factor of percentage of total business, this court looked to several different factors as well. Moreover, if this court were to emphasize volume over percentage, as the *Garrett* court did, the result would be the same. *See also Stojanovski v. Strobl & Manoogian, P.C.*, 783 F.Supp. 319, 322 (E.D.Mich.1992) ("It is the volume of the attorney's debt collection efforts that is dispositive, not the percentage such efforts amount to in the attorney's practice."). The volume of activity by the defendants here was quite small (21 files in 1994, 8 files in 1995), and does not nearly approach the level of the 639 letters sent in a nine-month span by the defendants in *Garrett*.

The contemporaneous decision in *Tragianese v. Blackmon*, which emphasized the intensity of the activity in question, is also consistent with this court's ruling. The defendant in that case sent collection letters to approximately sixty people in a span of a few weeks. The volume of activity in that case, carried out over a much shorter period of time, still exceeds the 29 cases taken on by the defendants in this case over a period of two years. As the court emphasized in its original ruling, the "regularity" determination must take into account the entire context of the activity and is dependant on the specific facts of the case. Volume, percentage of the business, and time period all are relevant factors. A single quantitative or qualitative factor, taken in isolation, can be a misleading measure of the regularity of collection activity. Inasmuch as plaintiff cannot show as a matter of law that the defendant "regularly" engaged in debt collection within the meaning of the statute, she cannot succeed on her claim.

### Conclusion

For the foregoing reasons, plaintiff's Motion for Reconsideration [doc. # 37] is DENIED.

IT IS SO ORDERED.