**Henna WHITE, Plaintiff,**

v.

**SIMONSON & COHEN P.C., Defendant.**

**No. CV–96–2523 (DGT).**

United States District Court,
E.D. New York.

Sept. 23, 1998.

Adam J. Fishbein, Uniondale, NY, for Plaintiff.

Daniel Cohen, Simonson & Cohen P.C., Staten Island, NY, for Defendant.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Plaintiff brought this action against defendant law firm alleging that a debt collection letter she received from defendant violated the Fair Debt Collection Practices Act ("Act" or "FDCPA"), 15 U.S.C. § 1692 *et seq.* Defendant filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, arguing, inter alia, that it is not a "debt collector" under the Act and, therefore, is not subject to suit thereunder. Plaintiff cross-moved for summary judgment arguing that defendant is a "debt collector" and, as such, sent plaintiff a collection letter containing numerous violations under the Act. Because the extent of defendant's debt collection activity is not sufficient to make it a "debt collector," it is not subject to suit under the Act and defendant's motion for summary judgment is granted.

**Background**

**(1)**

The material facts are not in dispute. Defendant law firm's partner, Robert M. Cohen is the personal lawyer for Dr. Jack Troper, a partner in the medical practice of Boro Park Obstetrics And Gynecology ("Boro"). Defendant claims that as a personal favor for Dr. Troper, Cohen agreed to send out 35 collection letters for Boro. Thirty-five letters were sent out all on the same day. The letter plaintiff received read:

Dear Mrs White:

Please be advised that our firm represents Boro Park Obstetrics And Gynecology, PC. They have advised us that you have an outstanding balance in the amount of $400.00. Said sum is due and payable as of November 23, 1994.

Prior to commencing legal action, it is our firm's policy to resolve matters such as this in an amicable fashion. Kindly forward payment payable to Boro Park Obstetrics And Gynecology PC, promptly, to my attention within ten days from receipt of this letter.

If you fail to take such action, you will leave us no alternative but to commence suit for collection. For your convenience, I am enclosing a copy of the invoice of

services rendered on your behalf, and the amount due.

Trusting that you give this matter your immediate attention.

Yours very truly,

Simonson & Cohen, P.C.

After receiving this letter, plaintiff's husband, Asher White, telephoned Cohen and assured him that the bill would be paid. White, who is an attorney, followed-up on this conversation with a letter to Cohen that stated: "As per our conversation on August 18, 1995 I am sending the bill to my insurance companies including G.H.I. and Blue Cross/Blue Shield. I realize any payments not made by the insurance companies remains our obligation. Thank you for your consideration in this matter." Affidavit of Robert M. Cohen, Exhibit B. Because of White's phone call and letter, Cohen did not include plaintiff's file with the thirty-four others he forwarded to a collection lawyer, apparently selected by the client, who would initiate litigation if it became necessary to effect payment on the outstanding balances described in the letters.

(2)

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6) reads:

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or *who regularly collects or attempts to collect*, directly or indirectly, debts owed or due or asserted to be owed or due another.

(emphasis added).

Plaintiff argues that there is at least a triable issue of fact as to whether defendant is a "debt collector" and contends that the correct manner in which to determine if defendant engaged in sufficient collection activity as to constitute "regularly collect[ing] or attempt[ing] to collect ... debts," is to compare the number of letters (and corresponding number of lawsuits that could have arisen from the letters, 35) to the total number of cases handled by defendant during the rele-

vant period. Though plaintiff was not permitted to conduct discovery to determine the exact number of cases defendants handled in a given period of time, in light of the court's reasoning below, this limitation did not cause plaintiff to be prejudiced.

### Discussion

#### (1)

Plaintiff cites several cases in support of its motion, but they are only marginally helpful for making a determination of whether defendant should be subject to suit under the Act because it is a "debt collector."

First cited is *Clomon v. Jackson,* 988 F.2d 1314 (2d Cir.1993), where the defendant attorney, sued under the Act, was a part-time general counsel to a debt collection company and received $24,000 in yearly compensation from that client. Defendant's company sent out letters to over a million debtors each year and each letter bore the following signature line: "P.D. Jackson, Attorney at Law, General Counsel, NCB Collection Services." Clearly, *Clomon,* on its facts, has no relevance to the present action.

In *Cacace v. Lucas,* 775 F.Supp. 502 (D.Conn.1990), also cited by plaintiff, the attorney defendant was found to be a debt collector under the Act. The court noted that the defendant had filed 144 small claims and 10 additional collection actions during a one year span from 1986–1987, and that this amount of debt collection litigation was substantial. In fourteen months the collection letter at issue had been used 125 to 150 times. The defendant also had an ongoing professional relationship with a credit union and more than 60% of his work for that client involved collection matters. Though the district court found that the defendant was a "debt collector," this case is also distinguishable on its facts. Nor is the court's legal analysis helpful to plaintiff. The court considered several factors: "the volume of the attorney's collection activities; the frequency of the use of the collection letter in question; and whether or not there is found to be an ongoing relationship between the attorney and the collection agency he represented." [1]

---

1. The fact that the *Cacace* court did not consider the proportion of the defendant attorney's total practice made up by the disputed debt collection argues against White's contention that because

she was deprived of the opportunity to discover such information from defendant, she has been unfairly prejudiced.

*Id.* at 504. Applying these factors to the current case—35 identical letters issued once over the course of the entire firm history combined with no ongoing relationship between the defendant law firm and a collection agency—*Cacace* does not support plaintiff's position that the defendant is a "debt collector" within the meaning of the Act.[2]

In *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319 (E.D.Mich.1992), the defendant law firm was sued under the Act for its representation of Chrysler Credit Corporation in debt collection matters. Only 4% of defendant's business concerned bill collection services and defendant argued that it was not a person who "regularly" collects debts. The court reasoned:

> [T]he word "regular" is not synonymous with the word "substantial." Debt collection services may be rendered "regularly" by defendant even though these services may amount to a small fraction of the firm's total activity. Further, the case law on point shows that an attorney "who engages in collection activities more than a handful of times per year must comply with the [Act]." *Crossley v. Lieberman,* 868 F.2d 566, 569 (3d Cir.1989). It is the volume of the attorney's debt collection efforts that is dispositive, not the percentage such efforts amount to in the attorney's practice. *Cacace v. Lucas,* 775 F.Supp. 502, 504 (D.Conn.1990)

> \* \* \* \* \* \*

This court is persuaded that the volume of defendant's debt collection practice is sufficiently high to constitute "regular" debt collection. Defendant has an ongoing relationship with Chrysler, a large corporation with presumably many overdue accounts on its books. While the ratio of debt collection to other efforts may be small, the actual volume is sufficient to bring

defendant under the Act's definition of "debt collector."

*Id.* at 322 (citations omitted).

Thus, though debt collection was a minor portion of the defendant's practice, because of the defendant's ongoing relationship with Chrysler Credit Corporation and the substantial volume of its collection activities, the law firm was held to be a "debt collector." *Stojanovski* is distinguishable from the instant case. While the lack of discovery precludes a definitive conclusion that Simonson & Cohen's mailing of thirty-five collection letters as an accommodation to a single client constitutes an insignificant portion of its practice, certainly, in terms of actual volume, its debt collection activity was insignificant. Furthermore, Simonson & Cohen had no ongoing relationship with a client for whom it conducted debt collection.

The cases cited by defendant in its moving papers present facts more analogous to those present here, but also do not paint a bright-line rule to which the court can adhere in determining whether defendant is a "debt collector." In *Mertes v. Devitt,* 734 F.Supp. 872 (W.D.Wis.1990), the court found that the defendant's collection activity over a ten year period consisted of two cases per year, which was less than 1% of its practice. The district court reasoned that:

> The principal purpose of defendant's business is not debt collection. Accordingly, the FDCPA is applicable to [defendant] only if his collection activities are sufficient to bring him within the definition as a person "who regularly collects or attempts to collect" debts of another.... [Here] [s]uch a limited involvement in collection matters does not satisfy the commonly understood meaning of the term regular. An interpretation which would include defendant's actions as "regular" debt collection

---

2. The extent to which a defendant initiates litigation to follow-up collection letters is also relevant to the determination of whether that defendant is a "debt collector" because the number of suits filed also serves to demarcate the scope of the defendant's debt collection practice. The fact that no suits were filed by Simonson & Cohen militates against a finding that it is a "debt collector." That is, if Simonson & Cohen had initiated litigation in following-up on many of the thirty-five collection letters, it would have en-

gaged in a far greater degree of debt collection activity than, as is the case here, where it simply sent letters out, but acted no further.

Also, as plaintiff urges, the question of whether Simonson & Cohen intended to file suit to follow-up any of the letters would be relevant to whether it committed specific violations of the Act. But, in light of the court's finding that Simonson & Cohen is not a "debt collector" under the FDCPA, it is unnecessary to address this argument.

would completely erase the limitation Congress included in the law and would be inconsistent with a common sense reading of the statute.

*Mertes,* 734 F.Supp. at 874.

As a further guide in its application of these facts to the Act's definition of a "debt collector," the district court reviewed the legislative history of a 1986 amendment to the Act that served to eliminate a carve-out previously excluding attorneys from the Act's restrictions. "Congress neither intended nor expected attorneys such as the defendant to be covered by the Act. Congress apparently contemplated that attorneys with only 'incidental' involvement in debt collection would remain unregulated. Not surprisingly this intention is entirely consistent with the language of the statute which reaches only those who regularly collect debts." *Id.*

Defendant also cites *Firemen's Ins. Co. v. Keating,* 753 F.Supp. 1137 (S.D.N.Y.1990), where the district court held that a law firm retained by plaintiffs, who were attempting to collect payments on limited partnership investments defendants had made, was not a "debt collector" under the Act because the firm's role was incidental to debt collection. This court also discussed the legislative history behind the Act's 1986 amendment:

> The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices." S.Rep. No. 95–382, 95th Cong., 1st *1142 Sess. 1, reprinted in 1977 U.S.Code Cong. & Admin.News 1695, 1696.... Although the FDCPA, as originally enacted, specifically excluded attorneys from the definition of "debt collector," it was amended in 1986 to delete the attorney exemption. Pub.L. 99–361, 100 Stat. 768, 15 U.S.C. § 1692a(6). Defendants argue that this amendment was intended to expand the scope of the FDCPA to reach activity such as Hart & Hume's representation of plaintiff in the instant actions. Having fully considered the legislative history and purpose of the FDCPA, and of the 1986 FDCPA amendment, the Court must disagree.

> In recommending passage of the FDCPA amendment, the House Committee on Banking, Finance, and Urban Affairs noted that as of 1985, approximately 5,000 attorneys were engaged in the business of debt collection, compared to approximately 4,500 "lay" debt collection firms. H.Rpt. 99–405, 99th Cong., 2d Sess. 2, reprinted in 1986 U.S.Code Cong. & Admin.News 1752. The purpose of the amendment was thus to close a significant loophole, whereby attorneys engaging in traditional debt collection activities were able to avoid the FDCPA's precepts merely by virtue of the fact that they had, at some point, obtained a law degree.

*Id.* at 1141–42.

This discussion indicates that while attorneys who are considered competitors of traditional debt collection companies should be covered under the Act, a firm whose debt collection activity does not approximate that of a traditional collection agency should not be suable under the Act.

### (2)

Other than the cases cited by the parties, there are few decisions delineating the scope of the Act's definition of "debt collector." In *Nance v. Petty, Livingston, Dawson & Devening,* 881 F.Supp. 223 (W.D.Va.1994), the district court found that volume of debt collection activity was the "critical factor in determining that the defendant regularly collected debts." In that case, defendant law firm, which engaged in debt collection as 1.07% of its business over a six month period, was found not to be a "debt collector." In *Von Schmidt v. Kratter,* 9 F.Supp.2d 100 (D.Conn.1997), the district court reviewed six cases, including two discussed here, dealing with attorneys as alleged debt collectors, specifically focusing on the volume of debt collection activity and how it related to the courts' rulings. The defendant lawyer in *Kratter* worked for a law firm that had one consumer credit client for three years and had collected $29.30, $328.21 and $450.28 from this client in each of those years. In the year that the defendant sent the plaintiff the disputed collection letter, 10% of new files opened were debt collection cases for the consumer credit client. In holding that Kratter was not a "debt collector," the district court reasoned:

> There are many quantitative and qualitative factors that a court could look to in determining the regularity of a defendant's debt-collecting activities.... Some courts

have found a single factor standing alone to be determinative. If no single factor predominate[s], courts should look to the overall circumstances on a case-by-case basis to make this determination.... If the percentage of new cases opened in a given year were the sole measure of regularity, the Court might conclude that 10% of new cases in a given year is significant enough to warrant a finding of regularity. However, other factors may be equally important and, at a minimum, provide a meaningful context for the "regularity" determination. The relationship between the defendants and the Moore Center lasted only three years, and thus was not a long-term course of dealing albeit with only one client. The overall volume of cases accepted from this client during the three years comprised a small portion of the overall caseload. Finally, the gross receipts from this activity constituted very minimal percentage of the firm's total revenues.

*Kratter,* 9 F.Supp.2d at 102 (citations omitted). If any of the factors suggested by the *Kratter* court, whether they be quantitative, such as volume, or qualitative, such as a possible relationship with a collection client, are applied to the facts in the present case, a conclusion that defendant is a "debt collector" is extremely difficult to entertain.

### (3)

At oral argument held on August 25, 1998, plaintiff's attorney was asked to present the most favorable court decision supporting the argument that defendant should be considered a "debt collector." Plaintiff's attorney stated that his best case was *Crossley v.*

*Lieberman,* 868 F.2d 566, 569 (3d Cir.1989). In that case, the court of appeals, citing a discussion of the Act's legislative history by a leading commentator on the Act, concluded that the defendant attorney was a "debt collector." The commentator had argued that "[b]oth sides in the floor debate [to the 1986 amendment] conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those who collect on an occasional basis and the small law firm which collects debts incidentally to the general practice of law." *Id.* quoting Hobbs, Attorneys Must Now Comply With Fair Debt Collection Law, Pa.J.L.Rptr., No. 46, 3 (Nov. 21, 1987).

While the commentator's language is helpful to the plaintiff, concededly the facts in *Crossley* were quite dissimilar to those in the current dispute. The defendant attorney in *Crossley* had as a principal part of his practice collection work, had initiated over a hundred debt related actions in the preceding 18 months and had ongoing relationships with four creditors for whom he conducted debt collection. *See Crossley,* 868 F.2d at 570 & n. 2. Given the defendant's extensive collection activity, the court of appeals was not required to precisely define when an attorney may be said to "regularly collect[ ] ... debts" so as to be subject to suit under the Act. Nonetheless, plaintiff argues that the court's reliance on the commentator's discussion, especially the notion that the Act should apply to lawyers "who collect on an occasional basis and [to] the small law firm which collects debts incidentally to the general practice of law," militated strongly in plaintiff's favor.[3] *See id.* at 569.

---

**3.** In addition to bringing *Crossley* to the court's attention, plaintiff also cited *James v. Ragin,* 432 F.Supp. 887 (W.D.N.C.1977). Plaintiff conceded that *Ragin* involved the Truth in Lending Act ("Lending Act"), 15 U.S.C. § 1601 *et seq.,* and not the FDCPA, but argued that the Lending Act's provisions defining a "creditor" are analogous to those in the FDCPA that define "debt collector." The Lending Act defines "creditor" to include persons who "regularly extend, or arrange for the extension of, credit." In *Ragin,* the defendant:

both acts as an agent for buyers and sellers of residential real estate and purchases and sells residential real estate for his own gain. Since beginning his real estate business ... [defendant has] purchased at least 47 houses in his

own name for re-sale.... On at least 10 occasions since defendant commenced his real estate business, he has made loans to the purchasers of homes he was selling.

*Ragin,* 432 F.Supp. at 889. The plaintiff claimed that the defendant was a "creditor" and had violated the Lending Act's provisions in arranging for a transaction through which the plaintiff would receive sufficient money to recover his home after it had been foreclosed upon because of mortgage payment defaults. The court concluded that the defendant was a "creditor" because "on at least 10 occasions in five years he had taken promissory notes and second deeds of trust to finance portions of the purchase price of homes that he had sold.... His personal extension of credit was a regular though intermittent part of his business...." Thus, even if the Lend-

The court does not read the 1986 amendment's legislative history to support plaintiff's argument. Reviewing other courts' commentaries on the legislative history of the 1986 amendment, as well as the history itself, the court finds that Simonson & Cohen is not a "debt collector," as this term was contemplated by the amendment's framers. In debating the prudence of the 1986 amendment, the framers clearly recognized that excluding from the Act's purview attorneys or law firms that engaged in collection work and competed with traditional collection firms significantly thwarted accomplishment of the Act's objectives. Indeed, this point was highlighted by allusion to the fact that in 1985, just prior to passage of the amendment, the number of attorneys engaged in the business of debt collection exceeded the number of non-lawyer collection firms. Thus, the amendment's focus was not on every attorney who engaged in extremely minimal debt collection, but, rather, on the practical fact that 5,000 lawyers whose main practice was debt collection and who constituted 50% of the debt collection industry were outside of the Act's reach. And the lack of regulation no doubt gave lawyers a competitive advantage in attracting debt collection clients. The amendment closed an exemption that threatened to make the statute meaningless, but the legislative history cannot fairly be read to endorse the notion that the amendment was aimed at law firms whose debt collection activity, such as is the case here, is isolated and nonrecurring and amounts to an "incidental" part of the firm's legal practice. *See Mertes v. Devitt*, 734 F.Supp. 872, 874 (W.D.Wis.1990),

### (4)

As the above discussion indicates, plaintiff finds no support for a finding that defendant is a "debt collector" in either his cited court decisions or in the legislative history of the 1986 amendment. Admittedly, these court decisions, and others cited by defendant and

researched by the court, do not clearly define the exact amount of debt collection activity required for an attorney to be found a "debt collector." Yet, they do make clear that the facts in this case do not support such a finding. Simonson & Cohen sent thirty-five collection letters on one occasion in its over thirty-nine years of practice, and there is no evidence that it had an ongoing relationship with a credit agency. This level of activity does not come close to that of the defendants in *Clomon, Cacace, Stojanovski,* and *Crossley,* where the courts found the defendants to be "debt collectors" under the Act. Simonson & Cohen's debt collection activity is surely more akin to that of the defendants in *Mertes* and *Keating,* which engaged in very limited debt collection.

In sum, by sending out one mailing of thirty-five collection letters in nearly four decades of practice, defendant cannot be said to "regularly collect[ ] ... debts." Simonson & Cohen is not a "debt collector" and, accordingly, is not amenable to suit under the Act. Defendant's motion for summary judgment is granted.

### Conclusion

For the reasons stated above, defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is dismissed as moot.

The Clerk of the Court is directed to enter judgment in favor of defendant and close the case.

SO ORDERED.

---

ing Act were held to be analogous to the FDCPA, this case is distinguishable on its facts. The defendant in *Ragin* engaged in credit transactions ten times over a five year period—which was by no means an extensive history, but, nevertheless, evinces a continual and lengthy involvement with issuing credit. Simonson & Cohen, on the other hand, engaged in one isolated incident of debt collection over the entire firm histo-

ry. It is simply not appropriate for this court to hold, like the *Ragin* court, that Simonson & Cohen's debt collection was "regular though intermittent." Moreover, the two statutes' closeness may be illusory at best. The decision to part with money as opposed to the sending of collection or dunning letters presents far different considerations for the lender than does the comparable decision by a "debt collector."